UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| SANDRA L. DENMAN, | ) | Case No. 4:05 CV 1910 |
| | ) | |
| Plaintiff, | ) | Judge Peter C. Economus |
| | ) | |
| vs. | ) | O R D E R |
| | ) | (Resolving ECF #57, 59) |
| YOUNGSTOWN STATE UNIVERSITY, | ) | |
| | ) | |
| Defendant. | ) | Magistrate Judge James S. Gallas |
| | ) | |

Plaintiff was formerly employed by defendant as University General Counsel from approximately March 1994 to June 30, 2003, when she was demoted to the position of Director of Environmental and Occupational Health. In that capacity plaintiff worked until June 30, 2004. Plaintiff had worked under a series of renewable contracts from the inception of her employment and these contracts had been renewed approximately every two years, until the final contractual period. Plaintiff claims that the contract contained certain appeal procedures which defendant denied to her and denied other protections which defendant had granted under its 1999 continuity of employment policy. Plaintiff following termination pursued administrative remedy through the EEOC and then brought suit claiming that gender discrimination and retaliation for engaging in a protected conduct in violation of Title VII (42 U.S.C. §2000e-2, §2003e-3), gender discrimination and retaliation contrary to the Equal Pay Act (29 U.S.C. §206(d), §215(a)) and gender discrimination and retaliation in violation of Title IX (20 U.S.C. §1681 *et. seq.*).

Proceedings in this case have frequently been interrupted by discovery disputes between the parties. The current dispute arose over defendant's refusal to produce requested documents and make available certain members of the Ohio Attorney General's staff for deposition.

*Compliance with L.R. 37.1*

On July 20, 2007 counsel for plaintiff sent a notice of discovery dispute to the court stating that if the parties were unable to resolve these matters expeditiously, the plaintiff would proceed to file a motion to compel discovery on July 23, 2007 (ECF #57). On July 23, 2007 the court referred the notice of discovery dispute to the undersigned with the finding that Local Rule 37.1 requirements had been met and the undersigned should hear and resolve the discovery dispute (Order, ECF #58). On that same date as represented in the notice, plaintiff filed her notice to compel discovery (ECF #59). Defendant contends that the motion to compel should be denied because plaintiff did not follow the procedure of L.R. 37.1(a)(2) and (3) which require the judicial officer initially to resolve the discovery dispute by telephone conference and, if that is unsuccessful, to require the parties to outline their respective positions by letter. It is only after exhaustion of this procedure that the parties may file their respective memoranda in support of in opposition to request discovery under L.R. 37.1(a)(4).

The undersigned agrees that defendant is procedurally correct. The notice bypassed the initial telephone conference requirement. Nonetheless due to the complexity of the plaintiff's arguments, they do not lend themselves to resolution by the telephone conference and the matters ultimately

4:05 CV 1910            3

would require briefing, which has occurred in this case. Accordingly, the motion to compel will not be denied for the failure to follow L.R. 37.1(a).

*Waiver of Attorney-Client Privilege:*

The first question though is whether a university can assert attorney-client privilege in an employment dispute. The use of the attorney-client privilege could potentially defeat the release of peer review materials relating to university faculty as was at issue in *University of Pennsylvania v. EEOC*, 493 U.S. 182 (1990). There the Supreme Court refused to recognize a First Amendment right to academic freedom which would cloak a university professor's peer review materials from disclosure against allegations of Title VII race and sex discrimination, and more importantly the university refused to expand FRE 501 to recognize a common law privilege to protect the integrity of the university's tenure review process. As noted in the decision, Title VII as originally enacted exempted educational institutions with respect to employment but this exemption was removed eight years later. *University of Pennsylvania*, 493 U.S. at 189-90. The Supreme Court, though, did not address the more orthodox attorney-client privilege and work product doctrine. Nevertheless it appears that universities have routinely raised the attorney-client privilege and work product doctrine following the decision *University of Pennsylvania*. For example, in *Seal v. Univ. of Pittsburgh*, 135 F.R.D. 113 (W.D. Pa. 1990), the court refused to issue a protective order barring disclosure of contents of meetings, communications or discussions in relation to the termination of an associate dean in which counsel participated or was involved, but the court was receptive to particularized assertions of the attorney-client privilege and work product doctrine. The assertion of attorney-client

4:05 CV 1910                                       4

privilege was also permitted in *Carter v. Cornell Univ.*, 173 F.R.D. 92 (S.D. N.Y. 1997), in an employment context. There the court relied upon two Supreme Court cases as illustrations that the attorney-client privilege and work product doctrine extended to university employees, and not simply to the university itself. As *Carter* illustrates, a university in an employment context may be treated as any other employer with the same obligations to disclose and the same protections and privilege.

Plaintiff requests the court order production of discovery in six areas. The first two of which are as follows:

   1.   that Defendant make available for deposition Ohio Attorneys General Elizabeth Smith, Roger Carroll, Mark Michael, James Petro, Marla Bressler-Burton, and Ann Thomson;

   3.   that Defendant's witnesses answer questions in the depositions of Franklin Bennett, Jr., John Habat, Chalder Kohli, John Pogue, and David Sweet to which Defendant objected on the basis of privilege.

The first area of plaintiff's concern is defendant's refusal to make members of the Ohio Attorney General's staff available for deposition and to require certain staff of defendant's employees to respond to questions without objection on the basis of attorney-client privilege. Because this case rests on federal question jurisdiction, federal common law governs questions of privilege. See *General Motors Corp. v. Director of Nat'l Inst. for Occupational Safety & Health*, 636 F.2d 163, 165 (6th Cir. 1980).

Plaintiff relies on defendant's response to the second interrogatory from the first set, which requested the defendant to provide the name, address, phone number, gender, and position or job title

of each individual who participated in any way in the employment, promotion, raise, transfer, non-renewal, termination or reassignment decision from date of hire through the present concerning plaintiff, identifying each person's role in making any decision." (See Interrogatory No. 2, Plaintiff's Ex. 2, ECF #59-3). Defendant *inter alia* included James Petro, Elizabeth Smith, Roger Carroll, Mark Michael, Annie Thompson as "Consulted regarding non-renewal of general counsel contract and subsequent transfer decision." *Id.* Plaintiff also seeks a deposition of Marla Bressler-Burton explaining that three days before the close of discovery defendant identified her as a participant in the meeting between Assistant Attorney Generals Smith and Carroll with University Vice President John Habat on November 7, 2003. Plaintiff contends that identifying several attorney generals in response to interrogatory no. 2 without objection based on privilege, waived any attorney-client privilege. Plaintiff's argument relies on *Rutgard v. Haynes*, 185 F.R.D. 596 (S.D. Cal. 1999), and *Dion v. Nationwide Mut. Ins. Co.*, 185 F.R.D. 288 (D. Mont. 1998). Plaintiff believes that divulging the relationship with counsel in the interrogatory rendered these members of the Ohio Attorney General's staff and the former Ohio Attorney General himself witnesses and argues that the parties' identification of an attorney as a witness constitutes a waiver not only of the privilege but any protection of communications (Memorandum, p. 4, ECF #59).

This argument is patently incorrect. In *Rutgard*, the client indicated its attempt to waive the attorney-client privilege by disclosing damaging communications and in *Dion* the client indicated his intent to use counsel as an expert witness. Nothing of that nature has presented itself here in this matter. There is no indication that defendant intends to rely on divulgence of communications from

counsel such as in a situation where a party seeks to raise a good faith defense in reliance on advice of counsel. Compare *Nguyen v. Excel Corp.*, 197 F.3d 200 (5th Cir. 1999); *Rhone-Poulenc Rorer, Inc. v. Home Indem. Co.*, 32 F.3d 851, 863 (3rd Cir. 1994); *Cox v. Administrator United States Steel & Carnegie*, 17 F.3d 1386, 1490 (11th Cir. 1994). In those instances the attorney-client privilege is waived. But see *Ross v. City of Memphis*, 423 F.3d 596, 603-04 (6th Cir. 2005) (reliance on advice of counsel is not a component of qualified immunity defense, hence no waiver in most situations). However, defendant is not supporting its case by reliance on advice from counsel.

Waiver of attorney-client privilege occurs when the party fails to assert it when confidential information is being sought in legal proceedings. *Nguyen v. Excel Corp.*, 197 F.3d 200, 206 (5th Cir. 1999). Simply identifying counsel and the general subject matter of the legal services is not protected by the attorney-client privilege, and does not waive attorney-client privilege. *Nguyen*, at 206; *U.S. v. Legal Services for New York City*, 249 F.3d 1077, 1081, 346 U.S. App. D.C. 83, 87 (C.A. D.C. 2001); *In re Grand Jury Subpoenas*, 204 F.3d 516, 520 (4th Cir. 2000). Assertion of the privilege is only required when there is inquiry into the actual substance of the communications such as the client's specific request to the attorney and pertinent information including the research undertaken by counsel to respond to the client's request. *Nguyen*, at 206. There is no attorney-client privilege protecting, "records of dates, places or times of meetings or communications [but] not the content of those communications...." *Dayco Corp. Derivative Securities Litigation v. Jacobs*, 102 F.R.D. 633, 635 (S.D. Ohio 1984), quoting *In Re Grand Jury Proceedings (Twist)*, 689 F.2d 1351, 1352 (11th Cir. 1982). As illustrated in *U.S. v. Goldfarb* 328 F.2d 280 (6th Cir.1964), the permissible

4:05 CV 1910                                                                                  7

inquiry can nearly touch the communication between counsel and client before it becomes privileged.. [1] Defendant's response to the interrogatories revealed non-privileged information of the general nature of the consultation with counsel and did not waive attorney-client privilege.

Plaintiff next relies on the confidential draft letter requesting advice from the Ohio Attorney General in the form of a formal opinion letter on several issues involving plaintiff's employment (Plaintiff's Ex. 9, ECF #59-10). Counsel for defendant maintains that this was an inadvertent disclosure (TR.21-22). He claims that he had a subsequent phone conversation with plaintiff's counsel and it was his understanding that there was agreement to return the confidential draft letter but later plaintiff's counsel denied having made any such agreement and told him to go to the court. (*id.*).

---

[1] Attorney was compelled to answer the following four questions because the responses did not come within the attorney-client communication privilege:

1. Did you have occasion to discuss the matter of the purchase of the house with one Lawrence Burns during 1961?

2. To your knowledge did Mr. Lawrence Burns represent as attorney or otherwise Mr. Charles Sherman with respect to the sale or disposition of the house at 11310 Myers Road, in connection with any conversation that you may have had or dealings you may have had with Mr. Lawrence Burns, on behalf of Mr. Walter Pilat?

3. Did you have occasion to have a conversation with one Lawrence Burns during 1961, or at any other time in which the subject of the house at 11310 Myers Road was discussed?

4. Have you at any time had discussions with, or negotiations with Mr. Charles Sherman, or his wife, or attorneys, or agents on their behalf in connection with the sale or disposal of the house located at 11310 Myers Road by them?

*U.S. v. Goldfarb* 328 F.2d 280, 281 (1964)

4:05 CV 1910                                                    8

Plaintiff is referred to *Sampson Fire Sales, Inc. v. Oakes*, 201 F.R.D. 351 (M.D. Pa. 2001), for an excellent discussion on inadvertent disclosure and the ethics of retaining material which on its face appears subject to the attorney-client privilege or is otherwise confidential under circumstances where it is clear that the communication was not intended for the receiving lawyer. As noted in that case, federal courts do not agree on whether the attorney-client privilege is lost as a result of inadvertent disclosure. *Id.*, 201 F.R.D. at 359. Inadvertent disclosure can result in waiver of the attorney-client privilege. See *United States ex rel. Pogue v. Diabetes Treatment Centers of America, Inc.*, 444 F.3d 462, 467 (6th Cir. 2006).

At the hearing, defendant effectively opted to concede waiver, and argued that, "The law says you look to the subject matter of the revealed information and decide that the scope of the waiver revolves around that. This [letter] deals exclusively with the issue whether Sandra Denman enjoys tenure; whether she is entitled to continue to serve as general counsel until the end of time; whether her contract should be considered expired or not." (TR. 23). Defendant claims that even assuming there has been a waiver of the subject material, it is irrelevant. *Id.*

It is well established that in this circuit the courts take a narrow view of the waiver of the same "subject matter." The scope of the waiver turns on the scope of the client's disclosure and inquiry is whether the client's disclosure involves the "same subject matter" as the desired testimony." *U.S. v. Collis*, 128 F.3d 313, 320 (6th Cir. 1997); *In re Grand Jury Proceedings October 12, 1995*, 78 F.3d 251, 255-56 (6th Cir. 1996); *U.S. v. Skeddle*, 989 F.Supp. 906, 908 n. 2 (N.D. Ohio

1997). In *Skeddle,* Judge Carr delineated several factors to consider in determining whether the communications were on the "same subject matter;"

> 1) the general nature of the lawyer's assignment; 2) the extent to which the lawyer's activities in fulfilling that assignment are undifferentiated and unitary or are distinct and severable; 3) the extent to which the disclosed and undisclosed communications share, or do not share, a common nexus with a distinct activity; 4) the circumstances in and purposes for which disclosure originally was made; 5) the circumstances in and purposes for which further disclosure is sought; 6) the risks to the interests protected by the privilege if further disclosure were to occur; and 7) the prejudice which might result if disclosure were not to occur.

*Skeddle,* 989 F.Supp. at 909.

There has been explicit disclosure of the nature of the request to the Ohio Attorney General for a formal opinion letter, so the general nature of the lawyer's assignment is explicit as well as the lawyer's activities in fulfilling that assignment. The legal advice sought by defendant concerned whether the former university president exceeded his authority in granting plaintiff continuity in employment in 1999, plus there were several questions concerning estoppel and the implication of the fixed term contracts. The draft is dated February 2, 2004 and obviously discloses the specific and particularized nature of the legal advice being sought in anticipation of plaintiff's termination. However, as defendant argues, applying the narrow view of the same subject matter would yield nothing germane to plaintiff's allegations of differing forms of gender discrimination and retaliation. The primary focus of the communication is to resolve whether plaintiff was an employee "at will" as opposed to being entitled to some form of tenure, which is a state issue not germane to this litigation. The attorney-client privilege has been waived on this same subject matter and plaintiff's

4:05 CV 1910                                              10

inquiry into communications within the scope of the disclosure is permitted under the *Skeddle* factors.

> 2. that Defendant produce documents sent to or received from Defendant by the Office of the Attorney General, including any of its attorneys and Ohio Attorneys General Elizabeth Smith, Roger Carroll, Mark Michael, James Petro, Marla Bressler-Burton, Randy Knutti, and Ann Thomson, related to the employment status of Sandy Denman.
>
> 5. that Defendant and the Ohio Attorney General produce all documents subpoenaed from the Office of the Attorney General relating to communications with Defendant regarding Denman's employment status; and

The burden rests with the person asserting attorney-client privilege to establish its existence. See *U.S. v. Dakota*, 197 F.3d 821, 825 (6th Cir. 1999). The elements of the attorney-client privilege under federal common law are :(1) where legal advice of any kind is sought; (2) from a professional legal advisor in his or her capacity as such; (3) communications relating to that purpose; (4) made in confidence; (5) by client; (6) are at his instance permanently protected; (7) from disclosure by himself or by the legal advisor; (8) unless protection is waived. *Reed v. Baxter*, 134 F.3d 351, 355-56 (6th Cir. 1998).

Defendant has not met its burden of showing that the attorney-client privilege was at stake in the deposition of former University Vice President John Habat who was deposed on May 2, 2007 in regard to conversations he had with an Assistant Ohio General with respect to plaintiff's employment situation (Dep. 282-85, ECF #59-4). While defendant's counsel raised privilege, the deponent says that the denied legal advice was at issue and that the discussions were "more

4:05 CV 1910                                                                11

administrative in nature." While Mr. Habat arguably was willing to waive the potential attorney-client privilege, he lacks authority to do so. See *Commodity Future Trading Comm. v. Weintraub*, 471 U.S. 343, 348-49 (1995). That power rests with the university's board and even board members are incapable of waiving the privilege on an individual basis.

It is important to note though that Mr. Habat did respond to those initial questions in what he deemed to be administrative matters. What is left is the sole question where Mr. Habat was instructed not to answer, "Did you ever ask Ann Thompson for an opinion with respect to the nonrenewal of Sandy Denman's contract? . . . and tell me what you asked her?" (Dep. 288). From the context of the question itself it is obviously directed at obtaining confidential legal opinion and as for other instances where Mr. Habat did answer his response was he did not recall or remember (Dep. p. 282, 283, 291, ECF #59-4).

Lapses of memory are not waivers of the attorney-client privilege. Denying memory of discussions with counsel does not constitute an implied waiver of the attorney-client privilege nor does it amount to an inadvertent disclosure since a lack of recollection is no disclosure at all. See *Lasalle Bank National Assoc. v. Lehman Bros. Holdings, Inc.*, 209 F.R.D. 112, 118 (D. Maryland 2002); *Genentech, Inc. v. Insmed Inc.*, 236 F.R.D. 466, 469 (N.D. Cal. 2006); *Laser Indus. v. Reliant Technologies*, 167 F.R.D. 417, 446 (N.D. Cal. 1996). "Waiver is not likely to be found when the statements alleged to constitute waiver do not disclose the contents of a specific communication between client and attorney. " *Genentech, Inc.*, 236 F.R.D. at 469.

4:05 CV 1910 12

In regard to Dr. Kohli's deposition, he only revealed that he had a discussion with the Attorney General's Office on "where the board stood and where the president's authority was and what the role of Attorney General's Office had in that regard." (Kohli Dep. p. 39). Again this revelation follows under only a general topic as opposed to specific information or as defendant aptly describes it being in "opaque reference to counsel's advice." Dr. Kohli also did not have recollections to respond to some of the questions but again as explained previously this lack of recall does not constitute a waiver of the attorney-client privilege.

The same holds true with the deposition of Mr. Pogue who revealed only that he had discussions with the Ohio Attorney General's Office concerning his affidavit (Pogue Afft. p. 83, ECF #59-9). Thus the defendant is correct that the testimony from Mr. Habat, Dr. Kohli, President John Pogue and Board Secretary Frank Bennet communications with the Attorney General's office does not describe the contents thereof.

Defendant argues that Dr. Kohli did not contact the Ohio Attorney General's Office directly so his testimony is hearsay. However resolution of this issue is no longer key since the attorney-client privilege regarding the tenure and continuity of employment issues was waived by disclosure of the letter. There is no point in belaboring whether there was more than a generalized revelation of the topic revealed at Dr. Kohli's deposition with respect to January or February 2004 discussions on decisions regarding appeal of continuity of employment with the Ohio Attorney General's Office (Kohli Dep. p. 47-48). While defendant did object, Mr. Kohli did proceed to answer first saying that

4:05 CV 1910                                          13

he did not recall exactly what was discussed but concluding, "so we were getting some input from the Office of the Attorney General." *Id.* This discussion of continuity in employment relates to the disclosed confidential draft letter (Plaintiff's Ex. 9, ECF #59-10), which concerns that same subject matter of plaintiff's tenure in employment. That subject matter has been waived by the inadvertent disclosure of the letter and Dr. Kohli's testimony.

Plaintiff argues that on June 12, 2007, she served upon the custodian of records of the Office of the Ohio Attorney General subpoena for appearance at deposition and a subpoena *duces tecum* for certain documents and communications between defendant and the Ohio Attorney General's Office related to the decision to "non-renew" her contract. The Office of the Ohio Attorney General responded by stating that subpoenaed files were privileged and plaintiff points out that the Ohio Attorney General's office neither has filed a motion for protective order respect to subpoena nor produced the documents despite several attempts by plaintiff to move the issue forward.

Defendant responds that the parties had agreed to identify in a document that resembled a privilege log the communications with the Ohio Attorney General's Office in 2003. According to defendant the purpose was to provide information regarding the non-privileged issue of when former Vice President Habat communicated with the Ohio Attorney's Office whatever light this might shed on the timing of the decision not to renew plaintiff's contract which would be relevant to her allegations of engaging n a protected activity. Fed. R. Civ. P. 45(d)(2)(A) reads, "When information subject to a subpoena is withheld on the claim that it is privileged or subject to protection as trial-

preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim." Further Fed. R. Civ. P. 45(c)(2)(B) provides that if written objection is made to the production of subpoenaed documents, it is up to the requesting party to seek enforcement of the subpoena. It would appear from defendants' response that they did comply with this provision and plaintiff needs to present something more concrete than the failure to move for a protective order.

>    4.  that Defendant produce documents used to refresh the recollection of David Sweet during his deposition under Rule 612.
>
>    6.  that Defendant produce chronologies of events and related documents prepared by senior administrators, officials, and officers which were discussed at deposition but which Defendant has withheld from production.

Plaintiff argues that in several depositions the defendant's counsel had improperly attempted to influence the testimony of witnesses by efforts including refreshing the recollection of the witness with an F.R.E. 612 document and refusing to produce the document to plaintiff as required, attempting to place a notepad in front of the witness during deposition, falsely suggesting agency determinations to a witness and suggesting testimony to a witness that the witness did not independently recall and sharing documents with a witness during a break in the testimony to encourage the witness to change his testimony. However, aside from venting against the shenanigans by defendant's counsel at deposition the only item actually requested by plaintiff is that the court order defendant to produce the Rule 612 document relied upon by President Sweet to refresh his

recollection at deposition. At the hearing defendant's counsel testified that what was at issue was a three-page compilation prepared by him (TR. 25). Insofar as the other refreshing documents were concerned, defendant's counsel stated that they were made into an exhibit the second day of Dr. Sweet's deposition and are in plaintiff's hands so the only thing they don't have is the three-page compilation which defendant claims is work product. (TR. 25-26).

   The testimony with regard to the compilation was as follows:

> Q What did you do in order to prepare for today's deposition?
>
> A I reviewed documents, met with attorneys, reviewed a compilation of memos and other related items that were put together in a notebook that enabled me to look at the time frame over which I had responsibility for Ms. Denman since arriving as present.
>
> Q Did that compilation of memos and other related items help refresh your recollection as to the events leading up to Sandy Denman's nonrenewal?
>
> A Yes.
>
> Q And was this compilation of memos, was it a document actually written by lawyers that you reviewed?
>
> A No. It was a series of documents that were compiled by msyelf, **as well as the attorneys**, that related to activities — memos and other related documents on point to this particular discussion. (emphasis supplied).

   Two hurdles stand in the way of plaintiff's request. First under F.R.E. 612 while writing is used to fresh memory *before* testifying, these rights may be exercised only "if the court in its discretion determines it is necessary in the interest of justice." The second is the work product

doctrine. See *Butler Manufacturing Co. v. Americold Corp.*, 148 F.R.D. 275, 278 (D. Kan. 1993). However plaintiff does not show that the refreshing documents were written by counsel but only "compiled" by counsel — which would make them more in the nature of work product than attorney-client communications. Plaintiff argues that production is necessary because Dr. Sweet has no ability to be consistent with his dates and whether or not the Assistant Attorney General's will testify at some point later in time as to when these decisions did or did not occur and when conversations did or did not occur is relevant to this three-page compilation (TR. 29).

Plaintiff refers the court to *Barrer v. Women's National Bank*, 96 F.R.D. 202 (D. D.C. 1982), which concerns attorney-client privilege. The undersigned finds, however, *Barrer* was cited as authority in relation to a request for work product consisting of a two-page position paper prepared by defendants' attorney in *Parry v. Highlight Industries, Inc.*, 125 F.R.D. 449 (W.D. .Mich. 1989). However there is no argument presented that this three-page compilation would "engender a false memory." See 28 Wright & Gold Federal Practice & Procedure §6184, p. 459 (1993). Thus justice does not require production of this refreshing document, because this information is attainable from other sources.

Furthermore the fact that Dr. Sweet was inconsistent in his dates in discovery is a matter that certainly can be brought out at trial and the fact that the witness may testify to a different date can be impeached by deposition so the only point the undersigned sees in producing this compilation is an effort to perhaps embarrass defendants' counsel during trial. Accordingly the motion to compel

4:05 CV 1910                                          17

is granted insofar as there has been a waiver of the attorney-client privilege with respect to the subject matter of plaintiff's tenure in continuity of employment due to the unretracted confidential letter requesting an opinion from the Ohio Attorney General on those issues. However in all other respects the attorney-client privilege remains intact and further plaintiff has not established that production of the chronology is necessary in the interests of justice under F.R.E. 612.

   IT IS SO ORDERED.

                                                  _____s/James S. Gallas_____
                                                  United States Magistrate Judge

Dated: September 21, 2007